# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 97

State of North Dakota, by and through
Workforce Safety and Insurance,                                    Appellant

v.

Gloria Felan, application for death
benefits for Fred Felan,                                           Appellee

and

KB & O Partnership,                                                Respondent

## No. 20200354

Appeal from the District Court of Sargent County, Southeast Judicial District, the Honorable Mark T. Blumer, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and Justices VandeWalle and McEvers joined. Justice Tufte filed a dissenting opinion.

Jacqueline S. Anderson, Special Assistant Attorney General, Fargo, ND, for appellant.

Dean J. Haas, Bismarck, ND, for appellee.

**Crothers, Justice.**

[¶1]   WSI appeals from a judgment ordering payment of death benefits to Gloria Felan. WSI argues the administrative law judge (ALJ) misapplied the law in finding Gloria Felan proved a compensable injury. We reverse and remand for proceedings consistent with this decision.

I

[¶2]   On September 14, 2017, Fred Felan was injured when driving a loaded truck that tipped on its side. Julie Schulz of KBO Farms, Fred Felan's employer, arrived at the scene a short time later. Fred Felan declined an ambulance but agreed to allow Schulz to drive him to the hospital in Oakes. At the hospital Fred Felan complained of left chest and rib pain. Fred Felan had a normal heart rate, rhythm and sounds but had decreased breath sounds in his lower left and right chest and some breast tenderness. X-rays taken at the hospital did not reveal any fractures. Hydrocodone was prescribed for pain as well as a rib belt for comfort.

[¶3]   The morning of September 15, 2017, Schulz picked up Fred Felan from the hotel and brought him to eat. Schulz noted Fred Felan was falling asleep during the meal and expressed concern he should return to the hospital to get checked again. Fred Felan declined, responded he was fine, and informed Schulz he had taken five hydrocodone. When Schulz expressed concern about the amount of hydrocodone Fred Felan had taken, he responded he was a big man, that he had taken that many before, and declined to return to the hospital.

[¶4]   Fred Felan was discovered dead in his hotel room on September 16, 2017. WSI received information of Fred Felan's death on September 20, 2017. On September 22, 2017, WSI accepted Fred Felan's claim for injuries relating to his truck accident for contusion of thorax. Gloria Felan informed WSI she was unsure if the death was due to Fred Felan's injury because he was doing alright

1

after the accident, but that she was having an autopsy conducted. WSI also reported the death and stated it was not believed to be due to the work injury because Fred Felan had multiple health problems including some related to his heart and diabetes. The autopsy confirmed Fred Felan died of congestive cardiomyopathy and arteriosclerotic heart disease.

[¶5]   In September of 2018, Gloria Felan filed a claim for death benefits. WSI investigated and gathered information from Gloria Felan and KBO Farms. WSI denied the claim under N.D.C.C. § 65-01-02(11)(a)(3). On December 13, 2018, WSI issued its administrative order denying the claim for death benefits.

[¶6]   Gloria Felan requested an administrative hearing. A hearing was held November 7, 2019, with the only issue being "whether Claimant's surviving spouse has proven by a preponderance of the evidence entitlement to payment of death benefits in connection with claim filed on September 15, 2017."

[¶7]   On February 25, 2020, the ALJ issued its findings of fact, conclusions of law, and order reversing WSI's administrative order. The ALJ found the following:

> "Under North Dakota law, a claimant seeking WSI benefits has the burden of proving by a preponderance of the evidence that the claimant had suffered a compensable injury and is entitled to benefits. A 'compensable injury' is defined in North Dakota Century Code section 65-01-02, Subd. 10 (now Subd. 11) as an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings. The statute goes on to state that a compensable injury <u>includes</u> 'Injuries due to heart attack or other heart-related disease, stroke, and physical injury caused by mental stimulus, but only when caused by the employee's employment with reasonable medical certainty, and only when it is determined with reasonable medical certainty that unusual stress is at least fifty percent of the cause of the injury or disease as compared with all other contributing causes combined. Unusual stress means stress greater than the highest level of stress normally experienced or anticipated in that position or line of work.' I note that the Legislature did not place 'injuries due to

2

heart attack or other heart-related disease' in the paragraph that defines what is not a compensable injury, for example, pre-existing conditions. The Legislature could have, but did not, enact a law that 'injuries due to heart attack or other heart-related disease is not compensable unless caused by the employee's employment with reasonable medical certainty, and only when it is determined with reasonable medical certainty that unusual stress is at least fifty percent of the cause of the injury or disease as compared with all other contributing causes combined.'

"This ALJ reads the 'heart attack' portion of the statute as one that includes heart attacks and heart disease as being compensable if certain criteria are met as opposed to one that precludes heart attacks and heart disease if those criteria are not met, like the Legislature has done with pre-existing conditions. Therefore, a claimant who claims a heart attack or heart disease injury can still prove a compensable injury if they show 'an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.'"

(Citations omitted.)

[¶8] WSI appealed the ALJ's decision to the district court. On November 2, 2020, the district court affirmed the decision. WSI appeals from that judgment.

II

[¶9] WSI argues the ALJ and the district court misapplied the law by failing to properly apply N.D.C.C. § 65-01-02(11)(a)(3).

[¶10] This Court under N.D.C.C. §§ 28-32-46 and 28-32-49 affirms an order of an administrative agency unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

[¶11] "When an independent ALJ issues final findings of fact, conclusions of law and order under N.D.C.C. § 65-02-22.1, courts apply the same deferential standard of review to the ALJ's factual findings as used for agency decisions." *Bishop v. N.D. Workforce Safety & Ins.*, 2012 ND 217, ¶ 6, 823 N.W.2d 257. However, no deference is given to an ALJ's legal conclusions, and questions of law are fully reviewable on appeal. *Id.* "On appeal from the district court's decision, we review the administrative agency's decision in the same manner as the district court, giving due respect to the district court's analysis and review." *Bergum v. N.D. Workforce Safety & Ins.*, 2009 ND 52, ¶ 8, 764 N.W.2d 178.

[¶12]  Under N.D.C.C. § 65-01-02(11)(a)(3), compensable injuries include:

"Injuries due to heart attack or other heart-related disease, stroke, and physical injury caused by mental stimulus, but only when caused by the employee's employment with reasonable medical certainty, and only when it is determined with reasonable medical certainty that unusual stress is at least fifty percent of the cause of the injury or disease as compared with all other contributing

causes combined. Unusual stress means stress greater than the highest level of stress normally experienced or anticipated in that position or line of work."

[¶13] "Our primary goal when interpreting a statute is to determine the intent of the legislature by first looking to the plain language of the statute and attempting to give each word, phrase, and sentence its ordinary meaning." *State v. Long*, 2020 ND 216, ¶ 6, 950 N.W.2d 178. This Court does not examine legislative history unless a statute is ambiguous. N.D.C.C. § 1-02-05. When a provision is unambiguous, this Court looks only to the plain language of the statute to ascertain its meaning. *Long*, at ¶ 6. "A statute is ambiguous when it is susceptible to differing, but rational, meanings." *Schulke v. Panos*, 2020 ND 53, ¶ 8, 940 N.W.2d 303.

[¶14] Here, the ALJ improperly applied N.D.C.C. § 65-01-02(11)(a)(3). The statute makes clear that to prove a compensable heart injury or disease, it is insufficient to look only at the event claimed to have caused the condition. Instead, the statute requires that the claimant prove at least 50% of the cause of the injury or disease was unusual stress through their employment. The ALJ's conclusion that the statute is one that "includes heart attacks and heart disease as being compensable if certain criteria are met as opposed to one that precludes heart attacks and heart disease if those criteria are not met," is inconsistent with the statute. The words *only when* in N.D.C.C. § 65-01-02(11)(a)(3) require that a claim for heart-related disease or injury be proven in one manner, and one manner only. The language is clear that any claim for an injury or disease relating to the heart must meet the criteria in order to qualify as compensable. The ALJ made no finding as to unusual stress as required by the statute and improperly applied N.D.C.C. § 65-01-02(11)(a)(3). The ALJ's conclusion Gloria Felan was allowed to prove Fred Felan's death was compensable another way expands the statute in a way the legislature did not intend. That part of the judgment finding a compensable heart-related injury may be established in a manner outside the statutory requirements is reversed and remanded for application of the statute as consistent with this decision.

5

# III

[¶15] WSI argues the ALJ erred as a matter of law in its interpretation of what constitutes medical evidence supported by objective medical findings. WSI asserts the requirement specifically applies to the burden placed on the injured worker or beneficiary to prove a compensable injury. We will consider this issue because it is likely to arise on remand. *See City of Bismarck v. Mariner Const., Inc.*, 2006 ND 108, ¶ 20, 714 N.W.2d 484.

[¶16] Section 65-01-02(11), N.D.C.C., requires an injury "be established by medical evidence supported by objective medical findings." "[O]bjective medical evidence may include a physician's medical opinion based on an examination, a patient's medical history, and the physician's education and experience." *Across Big Sky Flow Testing, LLC v. Workforce Safety & Ins.*, 2014 ND 236, ¶ 8, 857 N.W.2d 380 (quoting *Swenson v. Workforce Safety & Ins. Fund*, 2007 ND 149, ¶ 25, 738 N.W.2d 892).

[¶17] WSI argues the ALJ erred by failing to require medical evidence supported by objective medical findings of both an injury and that the injury was caused by unusual stress. To clarify, N.D.C.C. § 65-01-02(11) only requires objective medical evidence to establish an injury occurred. In contrast, N.D.C.C. § 65-01-02(11)(a)(3) requires causation be established with reasonable medical certainty. Notwithstanding that distinction, here the ALJ was provided with no objective medical evidence of the claimed injury. Gloria Felan's medical expert, Dr. Peretti, testified Fred Felan died of a cardiac arrhythmia caused by blunt force trauma to Fred Felan's chest cavity. However, Dr. Peretti admitted there was no objective medical evidence that an arrhythmia occurred. Rather, the conclusion Dr. Peretti reached was a result of deductive reasoning. As our precedent indicates, objective medical evidence may be established by a physician's medical opinion based on an examination, a patient's medical history, and the physician's education and experience. However, objective medical evidence may not be established solely by deductive reasoning. On this record, the ALJ erred in concluding there was objective medical evidence of a cardiac arrhythmia.

## IV

[¶18] We have considered any remaining issues and concluded they are either unnecessary to our determination or without merit. The judgment is reversed and remanded for proceedings consistent with this decision.

[¶19] Jon J. Jensen, C.J.
  Gerald W. VandeWalle
  Daniel J. Crothers
  Lisa Fair McEvers

**Tufte, Justice, dissenting.**

[¶20] I agree with parts I, III, and IV of the majority opinion. For substantially the reasons given by the administrative law judge, I disagree with the majority's analysis of the definition of "compensable injury," and as a result, I respectfully dissent.

[¶21] I believe the majority overlooks the words "caused by mental stimulus" in N.D.C.C. § 65-01-02(11)(a)(3). As a result, the majority interprets the two chained "only when" clauses as applying to all heart attacks rather than only to heart attacks "caused by mental stimulus." As explained by the ALJ, a heart attack not caused by mental stimulus falls under the provisions applicable to other injuries. There is evidence in the record that Fred Felan's heart attack resulted from blunt force trauma to the chest during a work-related rollover truck accident.

[¶22] I would apply our deferential review of the ALJ's finding that there was a compensable injury and affirm.

[¶23] Jerod E. Tufte